# In the United States Court of Federal Claims

No. 21-1341
Filed: June 22, 2021

| |
|---|
| **OWENS & MINOR DISTRIBUTION, INC.,** |
| *Plaintiff*, |
| **and** |
| **CONCORDANCE HEALTHCARE SOLUTIONS, LLC** |
| *Intervenor-Plaintiff,* |
| **v.** |
| **THE UNITED STATES,** |
| *Defendant,* |
| **MEDLINE INDUSTRIES, INC.,** |
| *Intervenor-Defendant*, |
| **and** |
| **CARDINAL HEALTH 200, LLC,** |
| *Intervenor-Defendant.* |

*Jonathan D. Shaffer*, Smith Pachter McWhorter PLC, Tysons Corner, VA, for Plaintiff, Owens & Minor Distribution, Inc.

*Aron C. Beezley*, with *Patrick R. Quigley*, *Lisa A. Markman*, *Nathaniel J. Greeson*, and *Sarah S. Osborne*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Intervenor-Plaintiff, Concordance Healthcare Solutions.

*Sarah E. Kramer*, Trial Attorney, and *Mollie Finnan*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Jason Fragoso*, Department of Veterans Affairs, *Gale Furman*, and *Katherine McCulloch*, Defense Logistics Agency, Of Counsel, for Defendant, the United States of America.

*Kristen E. Ittig*, with *Nathaniel E. Castellano*, and *Aime JH Joo*, Arnold & Porter Kaye Scholer, LLP, Washington, D.C., for Intervenor-Defendant, Medline Industries, Inc.

*Merle M. DeLancey, Jr.*, Blank Rome LLP, Washington, D.C., for Intervenor-Defendant, Cardinal Health 200, LLC.

## **MEMORANDUM OPINION**[1]

**TAPP, Judge.**

Before the Court is an interlocutory issue regarding the United States' proposed remand and the scope of that remand. In this protest, Owens & Minor Distribution, Inc. ("O&M") challenges corrective action taken by the Department of Veterans Affairs ("VA"), particularly the re-opening of price discussions with a successful offeror—Medline Industries, Inc. ("Medline")—and an unsuccessful offeror—Concordance Healthcare Solutions, LLC ("Concordance"). O&M claims that the VA omitted it from those discussions in violation of various Federal Acquisition Regulations ("FAR"). (Compl. at ¶¶ 42–47 (Count I), ECF No. 15). O&M also complains that, based on a planned transfer of requirements from the VA to the Defense Logistics Agency ("DLA"), the VA's Request for Proposal ("RFP") is materially inaccurate as to the scope of the services required and thus the procurement violates provisions of the FAR. (*Id.* at ¶¶ 48–58 (Count II)). Those issues are not yet fully briefed. O&M's protest is also directly related to another consolidated protest, *Medline Industries, et al. v. United States et al.* ("*Medline*"), Consol. Case No. 21-1174.[2]

In both protests, after Plaintiffs filed opening merits briefs, the United States moved for remand. (*E.g.*, USA Mot. to Remand, ECF No. 50). The United States admitted no error and promised no corrective action.[3] In the O&M action, the United States also sought to limit the scope of remand by excluding a single count of O&M's Complaint. Lastly, only two days prior to moving for remand, the United States proceeded to transfer one component of VA services to

---

[1] On June 17, 2021, the Court issued orders denying the United States' motions to remand in this case and in *Medline Industries, et al. v. United States et al.* ("*Medline*"), Consol. Case No. 21-1174. This Opinion explains the rationale for that decision.

[2] *Medline* involves the same parties in different litigation postures and principally challenges the transfer of the VA's requirements for medical and surgical supplies to the DLA, where those requirements will be filled by existing DLA contract awardees (O&M and Cardinal Health 200, LLC). In *Medline*, O&M is a defendant-intervenor contending that the planned transfer is lawful.

[3] Notably, it did so without discussions with the Plaintiffs despite having previously rebuked one plaintiff for acting unilaterally. (Tr. of Oral Arg. at 31:1–3; USA Opp. to Mot. for TRO at 8–9, ECF No. 56). In its response to a motion relating to injunctive relief, the United States grumbled that the other unsuccessful bidder "could have informed the United States that it was about to file a motion for preliminary injunction, and asked whether a motion for TRO would be necessary" but "[i]t did not. *As a litigation tactic, it favored the element of surprise instead.* [The unsuccessful bidder] should not now be heard to complain about the ramifications of its own failures to act promptly and cooperatively." (USA Opp. to Mot. for TRO at 8–9 (emphasis added)).

2

the DLA (VISN 6) and then took the position that it would not rescind that transaction. (*Id*. at 3–4).

Eschewing a cooperative approach (*supra* n. 3), the United States moved for remand on a Friday afternoon preceding a three-day holiday weekend, mere days before the deadline to file its own responses to the plaintiffs' opening merits briefs. In other words, portions of the United States actions appear to be calculated to disadvantage the plaintiffs and to garner indefinite delay prior to its own merit responses. The timeliness of the United States' maneuvers comes into play again as described below.

Despite its contention that it was not confessing error, during a hearing on June 4, 2021, the United States admitted that its merits position regarding the proposed transfer of VA requirements to the DLA lacked support in the Administrative Record:

> **The Court**: So just to be clear, the United States is making a judicial admission today, a binding judicial admission, that if we move forward, if the remand is not granted, the United States will not defend against the claim that the transfer to DLA is unlawful?
>
> **[The United States]**: We are conceding that there is not adequate support in the record. . . . We are recognizing that part of this Court's standard of review is whether there is a rational basis for an agency's action reflected in the record. That rational basis is not there.

(Tr. of Oral Arg. at 19:10–25, *Medline*, Case No. 21-1174, ECF No. 81). After that admission, the parties filed a joint status report on June 8, 2021. (JSR, ECF No. 56). Significantly, for the first time, and with only an intervening weekend, the United States surprised the Court yet again by informing the Court that "the [VA] has cancelled the planned transfer [of MSPV to the DLA], and is reconsidering whether any future transfer will even occur, and if so on what grounds and timeline[.]" (*Id*. at 5). The United States did not disclose the date this startling development occurred.

Helpfully, the parties have identified three categories of claims currently present and pending before the Court. (JSR at 2). "Category 1" includes the claims brought by Medline and Concordance challenging the transition of the Medical/Surgical Prime Vendor ("MSPV") 2.0 Program from the VA to the DLA. "Category 2" encompasses claims brought by Concordance and O&M which allege that the VA's MSPV 2.0 solicitation violates FAR § 15.206 because it doesn't reflect the current requirements of the VA. "Category 3" consists of a single claim—O&M's Count I protest that it should be included in the VA's price discussions among offerors for the latest MSPV 2.0 contract.

The United States seeks a remand of Categories 1 & 2, but requests that the Court sever O&M's lone claim in Category 3 and proceed with the merits briefing on that issue. (JSR at 3; USA Mot. to Remand at 3). The United States has represented that the VA is not amenable to imposing a voluntary stay of its MSPV 2.0 procurement, and that the United States intends to defend that claim on the merits, but requests the Court stay all other litigation pending the limited remand. (JSR at 3–6). The United States' proposed limited remand excludes some

aspects of MSPV 2.0 and the transfer, specifically VISNs 6 and 20. The United States explains that VISN 20 has been completely transferred to the DLA and that it went live on March 31, 2021. (USA Cross-MJAR at 13). The United States also explains that the VA has already transferred several facilities in VISN 6 and that it plans to complete both the second and third waves by July 21, 2021. (USA Cross-MJAR at 13–14, ECF No. 60). Medline provided MSPV services to VISN 6 for the VA, but Cardinal Health 200, LLC ("Cardinal") is currently providing, and will continue to provide, those services through its DLA contract.[4] The United States intends to continue with the transfer of those portions of MSPV 2.0 to the DLA regardless of whether the Court grants or denies the remaining portions of the requested remand.

As if the other changes in the administrative and litigation positions of the United States were not enough to delay an expeditious ruling on the remand issue, the United States took the position in its *Medline* response and cross-MJAR (filed the same day as the Joint Status Report), that despite its in-court statement, "[t]he agency has not confessed error here." (*Medline*, Case No. 21-1174, Def.'s Cross-MJAR at 18, ECF No. 84). The United States later repeated that contention in its Cross-MJAR in this case, which was filed four days later. (USA Cross-MJAR at 31). The United States attempts to square that circle by offering a narrower definition of "confession of error." Without citation, the United States contends that it hasn't confessed error, it has merely conceded that "the record simply does not support the decision made, not because the decision is inherently unlawful, but because it is not possible to discern the reasoning supporting it to determine its lawfulness." (*Id.*).

The Court is unable to see a meaningful difference. If the Court were to find that the VA's decision was "unsupported by the Administrative Record," or "lacked a rational basis," then the United States loses. The United States has admitted that the agency violated the Administrative Procedure Act by committing itself to an action unsupported by the Administrative Record and thus was arbitrary and capricious and an abuse of discretion. 5 U.S.C. § 706; *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ("An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."). The United States' admission is binding. *John McShain, Inc. v. United States*, 375 F.2d 829, 831 (Fed. Cir. 1967) (judicial admissions bind the party who made them). The Court's view, in light of the United States' admissions, is that *this transfer plan* is unsupported by the Administrative Record and therefore *this transfer plan* is unlawful, and although now (apparently) abandoned, *this transfer plan* was conceived in error. The United States has confessed that error in open court. Its attempt to retreat from that confession is unavailing.

It is important for the Court to clarify this point because although the United States has represented that the planned transfer "is cancelled," that statement standing alone in the briefs is inadequate to assuage the Court's concerns. (USA Cross-MJAR at 37 ("the agency has cancelled

---

[4] The United States asserts that reversing these transfers will be "unduly burdensome and unduly prejudicial[.]" (Mot. for Remand at 3–4). Medline disagrees, pointing out that the transfers have not been live for very long, and Medline has left the infrastructure in place to "immediately transition VISN 6 back" to Medline. (Medline Resp. to Mot. to Remand at 2 n. 1, ECF No. 54).

the planned transfer, and is reconsidering whether any future transfer will even occur, and if so on what grounds and timeline[.]")). The Court does not doubt that counsel for the United States has made that representation in good faith and to the best of her present knowledge. However, the sands on which the United States builds its defense have shifted since the inception of this action, leaving all to guess whether, after the next filing, the landscape will look the same tomorrow as it does today. The United States attached several affidavits to its Cross-MJAR. (*See* USA Cross-MJAR Exs. 1–3). Conspicuously absent in those declarations from VA and the DLA officials is a statement regarding the current status of the transfer. Is it indeed "cancelled?" The Court is left with some uncertainty.

In response to the United States, the parties have staked out a variety of positions that the Court will attempt to abridge. First, Medline agrees that a remand is appropriate with respect to Categories 1 & 2 but proposes specific objectives that it requests the Court order the agency to consider on remand. These objectives relate to the erstwhile contemplated transfer; Medline takes no position regarding a remand of the "Category 3" claim brought by O&M.

Second, Concordance's position is primarily in opposition to remand, but Concordance makes clear that it would support a remand that includes the objectives proposed by Medline with respect to "Category 1." Concordance, however, does not support a remand if, during the remand, the VA was not inclined to reconsider whether the challenged MSPV 2.0 solicitation reflected the current needs of the VA. Concordance *would* support a remand of Categories 2 and 3 if the VA announced a voluntary stay of the MSPV 2.0 procurement while it reconsidered that solicitation.

Third, O&M is opposed to a "limited remand," but has no objection to a remand that includes reconsideration related to claims in Categories 2 & 3 and includes a voluntary stay of the MSPV 2.0 procurement. In other words, O&M wants an "all or nothing" remand. O&M suggests that the Court either continue briefing without any remand, or remand its claim in Category 3 but set a briefing schedule so that O&M may move for a preliminary injunction regarding the VA's MSPV 2.0 procurement. Fourth and finally, Cardinal agrees with the United States that Categories 1 & 2 should be remanded and takes no position on a remand of Category 3, but states its opposition to that claim on the merits.

A remand is often, but not always, appropriate when the agency has a "substantial and legitimate" concern. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) ("[I]f the agency's concern is substantial and legitimate, a remand is *usually* appropriate.") (emphasis added); *see also Diversified Maint. Sys., Inc. v. United States*, 74 Fed. Cl. 122, 127 (2006) ("The circumstances found not to require remand have been rare indeed.") (collecting cases); *cf. Yang v. I.N.S.*, 109 F.3d 1185, 1194 (7th Cir. 1997) ("[I]t is pointless to remand if it is clear what the agency decision must be.") (internal quotations omitted). But as the United States has pointed out, "[t]his is a highly unique situation." (Tr. of Oral Arg. at 39:16). And the decision whether a remand is appropriate is within the trial court's discretion. *SKF USA*, 254 F.3d at 1029 ("the reviewing court has discretion over whether to remand.").

In attempting to determine what constitutes a "substantial and legitimate" concern, the Court finds the recent work of its colleagues persuasive. In *Keltner v. United States*, 148 Fed. Cl. 552 (2020), Judge Solomson recounted the history of voluntary remands, including the standards

articulated in *SKF USA*. Judge Solomson offered a test, crafted by the Court of International Trade, which the Court finds useful here: An agency's concerns are substantial and legitimate where (1) the agency provides a compelling justification for its remand request; (2) the need for finality does not outweigh the justification for voluntary remand presented by the agency; and (3) the scope of the agency's remand request is appropriate. *Id*. at 564; *see also Ad Hoc Shrimp Trade Action Comm. v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013). Following Judge Solomson's decision in *Keltner*, Judge Hertling concluded that the Court must engage with the record before it, and make a finding that the agency's concerns are *actually* substantial and legitimate, rather than simply crediting the United States' litigation position:

> [G]overnment motions for a voluntary remand to an agency for additional consideration should not simply be granted in a perfunctory manner. Rather, such motions should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified.

*Rahman v. United States*, 149 Fed. Cl. 685, 690 (2020). The Court finds that the United States fails to carry its burden on all three elements of the *Keltner* test.

     First, *the agency* has not provided a compelling justification for its remand request. Counsel for the United States has made conclusory representations that the agency's concerns are substantial and legitimate and warranted as a member of the Bar of the Court of Federal Claims, that those representations are made in good faith. However, as the Court noted during the June 4 hearing, the United States' motion contained no citations to the Administrative Record and was not accompanied by an affidavit of either of the agencies involved in this protest. (Tr. of Oral Arg. at 16:12–17:18). While the Court does not question the candor of the United States' counsel, it cannot assume that every request for a remand is substantial and legitimate. *See Keltner*, 148 Fed. Cl. at 566 ("Were this Court to hold differently, the government could always seek a voluntary remand following a fully briefed [MJAR and oral argument], thereby seeking to avoid a loss on the merits . . . ."). The *Keltner* test requires that the agency provide a compelling justification, and here the United States failed to support its motion with, at the least, statements from the agency representatives. This failure viewed in conjunction with the suspect timing of the United States' Motion prompts the Court to consider whether the United States' request is merely a litigation tactic. Consequently, its motion must fail.

     But even if the United States' Motion had been properly supported with the agencies' alleged compelling justifications, the Court finds that remand is inappropriate at this stage because the need for finality is overwhelming. As noted above, the United States repeatedly confessed agency error in open court. It conceded that the agency lacked a rational basis for the transfer of MSPV requirements from the VA to the DLA. This judicial admission removes that fact from issue. *Reliable Contracting Group, LLC v. Department of Veterans Affairs*, 779 F.3d 1329, 1334 (Fed. Cir. 2015) (judicial admissions "have the effect of withdrawing a fact from issue[.]") (internal quotations omitted); *B. D. Click Co., Inc. v. United States*, 614 F.2d 748, 756 (Fed. Cir. 1980) ("Admissions made in the course of judicial proceedings are substitutes for, and dispense with, the actual proof of facts."). The Court sees no need to wait six (or more) months for the agency to acknowledge this error itself, or worse yet, paper the current record to obscure what is apparently obvious to the Department of Justice today: that there is not "adequate support

for the planned transfer" in the Administrative Record and thus "it is not appropriate for [the United States] to continue to defend this action." (Tr. of Oral Arg. at 17:19–18:8). The United States also admits that either an adverse judgment or a remand would start the same processes at the agency level. (*Id*. at 18:16–21 ("The agency is offering to do now what in a best-case world it could do on day two after this Court issues a decision[.]")). The Court sees no need to stay its hand when the United States has admitted that a decision on the merits will spur such prompt corrective action. A decision on the merits looms.

The United States admits that protestors are entitled to judgment on claims which challenge the transfer under the Administrative Procedure Act's arbitrary and capricious standard of review. The Court can provide a remedy that grants finality (and clarity) to all parties in three separate protests on the majority of their claims. It is difficult for the Court to imagine a set of compelling agency justifications that—even if properly placed before the Court—would have outweighed the overwhelming interests of the parties and the Court to impose finality on this complex case. An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). "When an agency fails to comply with this minimum standard for agency action in the first instance — but the record is otherwise complete and permits judicial review — a party may seek judicial review and a court may order appropriate relief." *Keltner*, 148 Fed. Cl. at 565–66. Like the *Keltner* court, "[i]f the [agency] did not satisfy this minimum standard in the first instance, the Court sees no reason to afford the [agency] a 'second bite at the apple' without first reaching the merits[.]" *Id*. at 566. Because the need for finality outweighs the justification for remand, the United States' motion must be denied.

Even further supporting denial of the United States' motion, the Court finds that the scope of the remand requested is inadequate for two reasons. O&M has admitted that a remand in which the VA reconsiders the scope of the MSPV 2.0 solicitation has the potential to moot its Category 3 claim regarding its exclusion from price discussions. (JSR at 11). As these issues are inextricably linked, a partial remand without a complete stay of agency action combined with continued piecemeal litigation does not serve the interests of justice. But more importantly, the United States has expressed its intent to continue with the transfer of VISN 6. (USA Mot. to Remand at 3; JSR at 3). Neither Concordance, nor Medline, nor O&M object to VISN 6 remaining with the DLA. (Medline Resp. to Mot. to Remand at 2; JSR at 9 ("Concordance presently takes no position on the issue of VISN 20 and VISN 6" but reserved its right to object.); *see* O&M Resp., ECF No. 53 (no mention of VISN 6)). Nevertheless, the fact remains that the United States is arguing for a remand that excludes reconsideration of a transfer it has already conceded is unsupported by the Administrative Record. Without an expressed intent to reconsider the price discussion issue, as well as the entirety of the transfer, the scope of the United States' proposed remand is inappropriate.

The *Keltner* test is conjunctive. If the United States had failed on any one element, the Court would be justified in denying remand. But here, the United States fails on all three elements. The agency has not provided a compelling justification for remand, the need for finality dominates the United States' interest in a remand, and the scope of the proposed remand is inappropriate. Therefore, the Court's conclusion is clear: remand must be denied.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge